IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DAMARIS RODRIGUEZ,

    Plaintiff,

    v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Civil No. 12-1546 (SEC)

**OPINION AND ORDER**

This is an action brought under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The plaintiff Damaris Rodríguez (Rodríguez) seeks review of the Social Security Commissioner's (Commissioner) denial of her application for child's insurance benefits.[1] Docket # 1. Rodríguez filed a legal memorandum supporting her request (Docket # 17), and the Commissioner opposed (Docket # 18). After reviewing the filings and the applicable law, the Commissioner's decision denying child's insurance benefits is **AFFIRMED**.

**Factual and Procedural Background**

On July 16, 2008, Rodríguez filed an application for child's insurance benefits with the Social Security Administration, alleging disability beginning December 17, 1984. Among the reasons for the alleged disability, Rodríguez claimed to have Turner syndrome

---

[1] The Social Security Act provides for benefits to: "[e]very child … of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, … (1)(G) if such child was under a disability (as so defined) at the time he attained the age of 18 or if he was not under a disability (as so defined) at such time but was under a disability (as so defined) at or prior to the time he attained (or would attain) the age of 22." 42 U.S.C. § 402(d); see also 20 C.F.R. § 404.350.

and scoliosis.² Administrative Transcript (Tr.) 15. Her application and subsequent reconsideration were denied. Id. at 13. She then requested a hearing before an administrative law judge (ALJ), which was held on August 10, 2010. Id. The claimant waived her right to appear and testify at the hearing. Id. A medical expert and a vocational expert testified at the hearing. Id. But, after de novo review, the ALJ denied the petition, finding that prior to December 17, 2006, the date Rodríguez attained age 22, she was capable of performing jobs that exist in significant numbers in the national economy. Id. at 19.

To reach this conclusion, the ALJ considered Rodríguez's medical history, age, education, work experience, and residual functional capacity (RFC). Id. The ALJ also considered Rodríguez's medical records, including those from consultative examiner Dr. Germán E. Malaret (internist); her treating doctor, Dr. Ricardo Cardona (general practitioner and surgeon); Dr. Joseph C. Flynn, Jr. (orthopedic surgeon from the Spine and Scoliosis Center); Carmen Berrios (general practitioner); and Drs. Ramón A. Ruiz and Lorena Diaz (internists –state-agency physicians).³ The ALJ also heard testimony from Dr. Marieva Puig, vocational expert (VE), who testified that Rodríguez could "perform the requirements of representative occupations such as telephone clerk . . . and jewelry assembler." Tr. 19.

---

² Turner syndrome is "a condition that affects only girls and women [and] results from a missing or incomplete sex chromosome. Turner syndrome can cause a variety of medical and developmental problems, including short stature, failure to begin puberty, infertility, heart defects, and certain learning disabilities." Available at http://www.mayoclinic.org; see also Holsinger v. Comm'r of Social Security, No. 12-714, 2013 WL 3762274, at *2 n.1 (S.D. Ohio July 16, 2013).

³ The ALJ did not consider Dr. Berrios' medical evidence and reports because the "same refer to the claimant's condition after she ceased to be insured for child disability insurance benefits." Tr. 18; see also Merrit-Sullivan v. Astrue, No. 12-1784, 2013 WL 6096750, at *4, n. 2 (D.P.R. Nov. 20, 2013) (stating that "[e]vidence outside of the disability insurance period is ordinarily irrelevant…"); Padilla-Pérez v. Sec'y of Health and Human Services, 985 F.2 552 (1st Cir. 1993).

The following excerpts from the ALJ's decision best illustrate the ALJ's methodology and findings:

1. Born on December 17, 1984, the claimant is alleging disability since birth and she attained age 22 on December 17, 2006.

2. The claimant has not engaged in substantial gainful activity since December 17, 1984, the alleged onset date.

3. Prior to attaining age 22, December 17, 2006, the claimant had the following severe impairments: Turner syndrome and scoliosis.

4. Prior to attaining age 22, December 17, 2006, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, prior to attaining age 22, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404. 1567(a) from the physical standpoint.

6. The claimant has no past relevant work.

7. The claimant was born on December 17, 1984 and was 0 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8. The claimant has a limited education and is unable to communicate in English.

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Prior to attaining age 22, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, at any time prior to December 17, 2006, the date she attained age 22.

Dissatisfied with the ALJ's determination, Rodríguez appealed. The Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner and, therefore, subject to judicial review. Tr. 1-3.

On appeal, Rodríguez argues that the Commissioner's decision that she was not disabled within the meaning of the Social Security Act prior to attaining age 22 was not supported by substantial evidence in the record.

**Standard of Review**

The scope of review over the Commissioner's final decision is limited both by statute and case law. See 42 U.S.C. § 405(g). Section 405(g) provides that the findings of the Commissioner "as to any fact, if supported by substantial evidence, shall be conclusive . . ." In Richardson v. Perales, 402 U.S. 389, 401 (1971), the United States Supreme Court defined "substantial evidence" as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401.

In line with this definition, the First Circuit has directed courts in this District to uphold the Commissioner's "findings . . . if a reasonable mind, reviewing the evidence as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of H.H.S., 955 F.2d 765, 769 (1st Cir. 2001). So even if the record could justify a different conclusion, the Commissioner's findings must be affirmed if supported by substantial evidence. Evangelista v. Sec'y of H.H.S., 826 F.2d 136, 144 (1st Cir. 1987). That is, absent a legal or factual error in the evaluation of a claim, the Commissioner's denial of disability benefits stands. Sullivan v. Hudson, 490 U.S. 887, 885 (1989); Seavey v. Barnhart, 276 F.3d 1, 15 (1 Cir. 2001).

**Applicable Law and Analysis**

Here, the ALJ evaluated whether Rodríguez was entitled to child's insurance benefits for having a disability within the meaning of the Social Security Act prior to attaining age 22. Tr. 13.

Under the Social Security Act, a monthly benefit is provided for designated surviving family members of a deceased insured wage earner. Astrue v. Capato ex rel. B.N.C., 132 S.Ct. 2021, 2027 (2012). Child's insurance benefits "are among the Act's family-protective measures." Id. "An applicant qualifies for such benefits if she meets the Act's definition of "child," is unmarried, is below specified age limits (18 or 19) or is under a disability which began prior to age 22. Id. (citing 42 U.S.C. § 402(d)(1)). Section 202 of the Social Security Act provides for benefits to: "[e]very child … of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, …(1)(G) if such child was under a disability (as so defined) at the time he attained the age of 18 or if he was not under a disability (as so defined) at such time but was under a disability (as so defined) at or prior to the time he attained (or would attain) the age of 22. See also 20 C.F.R. § 404.350.

As stated, Rodríguez argues that the Commissioner's decision that she was not disabled within the meaning of the Social Security Act prior to attaining age 22 was not supported by substantial evidence in the record. Specifically, she alleges that (1) the ALJ's RFC finding was not supported by substantial evidence and was based on raw, technical data which cannot be duly interpreted and applied by a lay person like the ALJ; and (2) the

ALJ presented the VE with a hypothetical that "did not convey all of the plaintiff's limitations." Docket # 17, pp. 2, 4, 13.[4]

*The RFC Finding*

Determining whether the ALJ's RFC finding is supported by substantial evidence turns on the sufficiency and validity of the ALJ's explanations for refusing to give controlling weight to the opinion reached by Rodríguez's treating doctor, as well as the weight given to the consultative examiner, other physicians that examined Rodríguez, and the reports submitted by two non-testifying, non-examining physicians who reviewed the medical file. Moreover, the court must examine whether the evidence on record adequately supports the ALJ's conclusion.

On the issue of the nature and severity of an impairment, a treating source's opinion will be given controlling weight so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); see also Ormon v. Astrue, 497 Fed. Appx. 81 (1st Cir. 2012). When the ALJ does not give a treating physician's opinion controlling weight, the ALJ must "give good reasons in [his] notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. § 404.1527(c)(2); see also Soto-Cedeño v. Astrue, 380 Fed. App'x 1, 4 (1st Cir. 2010) (per curiam). However, "a decision to deny a treating physician's opinion controlling weight does not prevent the ALJ from considering it, … and the ALJ may still look to the opinion

---

[4] Insofar as Rodríguez's arguments on appeal are based solely on the propriety of the hypotheticals involving her physical limitation, she has waived any claims of defect with respect to the inclusion of her mental limitations. See Soto-Cedeño v. Astrue, 380 Fed. Appx. 1, 3 (1st Cir. 2010) (per curiam).

after opting to afford it less evidentiary weight." Elder v. Astrue, 529 F.3d 408, 415 (7th Cir. 2008). Exactly how much weight the ALJ affords depends on a number of factors, such as the length of the treatment relationship and the frequency of examination, the nature and extent of the physician and claimant's treatment relationship, "whether the physician supported his or her opinions with sufficient explanations, . . . and whether the physician specializes in the medical conditions at issue . . . ." Id. (citations omitted); see also 20 C.F.R. § 404.1527(c)(2)(i) & (ii).

On the other hand, the weight given to a non-examining opinion "will depend on the degree to which [it] provide[s] supporting explanations." 20 C.F.R. § 404.1527(c)(3). The general rule is that "a written report submitted by a non-testifying, non-examining physician who merely reviewed the written medical evidence could not alone constitute substantial evidence to support the [Commissioner's] conclusion." This principle is not an absolute rule, however. Berrios-López v. Sec'y of Health and Human Services, 951 F.2d 427, 431 (1st Cir. 1991); see also Tremblay v. Sec'y of Health and Human Services, 676 F.2d 11, 13 (stating that the First Circuit has repeatedly refused to adopt any per se rule to that effect). The advisory report submitted by a non-testifying, non examining physician who reviewed the medical file "is entitled to evidentiary weight, which 'will vary with the circumstances, including the nature of the illness and the information provided the expert.'" Id. (quoting Rodríguez v. Sec'y of Health and Human Services, 647 F.2d 218, 223 (1st Cir. 1981)); see also Berrios-López, 951 F.2d at 427 (the ALJ relied solely on the reports of state-agency physicians who did not examine the claimant); Tremblay, 676 F.2d at 13 (affirming the Secretary's adoption of the findings of a non-testifying, non-examining physician, and

permitting those findings by themselves to constitute substantital evidence, in the face of a treating physician's conclusory statement of disability).

Here, Dr. Cardona, Rodríguez's treating physician, a general practitioner and surgeon, stated that Rodríguez had pain all day exacerbated by walking and exercising; that she could not tolerate an eight-hour workday, five days per week on a sustained basis; and that she needed rest periods every two hours for 30 minutes. Tr. 113-18. The ALJ, however, provided good reasons for discounting some weight to Dr. Cardona's opinion. The ALJ explained that the "[w]eight given to the treating source [Dr. Cardona] is reduced somewhat because he is not an orthopedic specialist," but a general practitioner and surgeon. Tr. 17. Moreover, the ALJ stated that the medical evidence provided from Dr. Cardona's office does not support his medical opinion. Id. The evidence reflects that he only treated Rodríguez in three occasions before December 17, 2006, and one of them was for a skin condition. Id. He also noted that Dr. Cardona first treated her in April 2004 and then in January 2006, that is, one year and nine months later. Id. So Dr. Cardona's treatment was very sporadic, with years passing by without treating Rodríguez. Id. In addition, Dr. Cardona's progress notes are difficult to read, lack supporting explanation, and are somewhat conclusory. See Tr. 17, 113-18. The ALJ's decision to give partial weight instead of controlling weight to Dr. Cardona's opinion is, therefore, supported by substantial evidence and is in conformity with the applicable regulation. See 20 C.F.R. § 404.1527(c)(3); Soto-Cedeño, 380 F. App'x at 3 ("If [the treating physician's] reports explain the basis for his medical opinion, rather than merely stating his conclusions without any support or explanation, then [they are reliable.]")

Dr. Cardona additionally opined that Rodríguez had motor ataxia. Nonetheless, in March 2005 (when she was 20 years old), Dr. Flynn, an orthopedic surgeon from the Spine and Scoliosis Center -a center specialized in spine conditions and scoliosis- evaluated Rodríguez, and found that she had normal gait, station and coordination. Tr. 17, 395-96.[5] Moreover, Dr. Flynn reported her muscle strength as 5/5 for her lower and upper extremities. Id. According to his report, Rodríguez denied having numbness or weakness in the upper and lower extremities, cardiovascular disease, respiratory disease, gastrointestinal disease or neurological disease (denies hand trembling, loss of memory, stroke, gait disturbance). Tr. 395. While she alleged experiencing some lower back pain that "is relatively constant, worse with activity and improved with rest," she denied using any medication. Id. Dr. Flynn also stated that Rodríguez's back had a right thoracic left thoracolumbar scoliosis; but that she was alert and cooperative, appeared healthy and in no distress, her legs length were symmetric with full painless range of motion, and her neck had full range of motion with no focal tenderness or spasm. Id. Instead of noting any functional limitations, Dr. Flynn recommended physical therapy for Rodríguez's lower back pain as well as anti-inflammatory medication, and to return in three months for recheck. Id. It appears from the record that Rodríguez never visited Dr. Flynn again.

The medical expert, Dr. Malaret, determined that Rodríguez had Turner syndrome and scoliosis. Tr. 30. He further explained in the hearing that her only condition, according

---

[5] Ataxia describes a lack of muscle control during voluntary movements, such as walking or picking up objects. A sign of an underlying condition, ataxia can affect movement, speech, eye movement and swallowing. Available at http://www.mayoclinic.org; see also Montalvo v. Sec'y of Health and Human Services, 960 F.2d 143 (1st Cir. 1992) (ataxia is defined as the "inability to coordinate movements").

to the information on record, was the scoliosis, but that it did not create a disability. Id. Dr. Malaret explained that, although he could not assess the severity of the scoliosis, Dr. Flynn had not described it as severe in his report. Tr. 36. He further discredited Dr. Cardona's opinion about the alleged motor ataxia because "all other exams do not state this." Id. He explained that she could move perfectly fine, and that Dr. Cardona's opinion was contradicted by the record. Tr. 37. Based on the information on record and due to Rodríguez's height, he concluded that "she could lift 15 pounds or something like that and carry ten pounds." Tr. 35. The ALJ, however, gave partial weight to Dr. Malaret's opinion because he admitted during the hearing that he could not assess the severity of Rodríguez's scoliosis based upon the imaging results that revealed the extent of the scoliosis condition. Tr. 17.

But there is more. The ALJ also considered Dr. Ruiz's (internist and state-agency medical consultant) Physical Residual Functional Capacity Assessment, which, coupled with all of the above evidence and the specific facts of this case, constitutes substantial evidence to support the ALJ's finding. Dr. Ruiz stated that Rodríguez (1) could frequently lift and/or carry ten pounds and occasionally twenty pounds; (2) could stand and/or walk (with normal breaks) and sit (with normal breaks) for about six hours in an 8-hour workday, (3) could push and pull without other limitations than the above, and (4) had no postural manipulative, visual, communicative, environmental limitations. Tr. 411-18. Therefore, Dr. Ruiz found that Rodríguez could perform light work. Tr. 18. Light work requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Dr. Ruiz's report mentions claimant's alleged

impairments and states the medical evidence upon which he based his conclusions. This additional information suggests that Dr. Ruiz cautiously reviewed the medical file. See Berrios-Lopez, 951 F.2d at 431; see also Tremblay, 676 F.2d at 13 (affirming the [Commissioner's] adoption of the findings of a non-testifying, non-examining physician, and permitting those findings by themselves to constitute substantial evidence, in the face of a treating physician's conclusory statement of disability). Dr. Ruiz's physical assessment was in turn adopted by Dr. Diaz, an internist and another state-agency physician, who concluded that there was no worsening of the claimant's condition. Tr. 18 & 425.[6]

In light of the above, Rodríguez's allegation that the ALJ relied heavily on raw, technical data that cannot be duly interpreted and applied by a lay person like the ALJ does not persuade the Court. Clearly, the ALJ discredited some weight to Dr. Malaret's opinion because he could not assess the severity of the scoliosis. But the ALJ had additional evidence to adequately support his conclusion. The ALJ provided good reasons for discounting some weight to Dr. Cardona's opinion: The evidence related to Rodríguez's limitations was contradictory, and the record contains evidence from Dr. Flynn and two state-agency physicians who evaluated the alleged "raw, technical data" and interpreted it to complete the Physical Residual Functional Capacity Assessment. The ALJ thus properly included all limitations he found credible and which were supported by substantial evidence in his RFC finding. Furthermore, although most of the evidence shows that Rodríguez was

---

[6] With regard to the evidence and reports from Dr. Carmen Berrios, general practitioner, the ALJ explained that he did not consider them in order to render a decision because they refer to the claimant's condition after she ceased to be insured for child disability insurance benefits (dated December 17, 2006; that is, after the date last insured). On appeal, Rodríguez does not fault the ALJ for rejecting Berrios' report. So any defect with regard to this matter has been waived. See Soto Cedeño, 380 Fed. Appx. at 3.

able to perform light work during the period encompassed in her petition, the ALJ concluded that her residual functional capacity was for sedentary work before December 17, 2006, when she attained age 22. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools… [and although it] involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. 404.1567(a). Accordingly, substantial evidence supports the ALJ's conclusion that Rodríguez could perform sedentary work. Tr. 17-18.

*The VE's Hypotheticals*

Having established that the ALJ committed no error in assessing Rodríguez's RFC, the Court turns to whether the ALJ erred at step five by posing a deficient hypothetical question to the VE as to whether there are jobs that exist in significant numbers in the national economy that Rodríguez can perform. Here, Rodríguez says that the VE was presented with hypotheticals that "did not convey all of plaintiff's limitations." Docket # 17, p. 2. The ALJ posed the following hypothetical to the VE:

> Please consider an individual with the same work history, age, and vocational and academic profile as the claimant, in addition, an individual whose maximum exertional level is sedentary. Tr. 65.

In response, the VE identified the occupations of telephone clerk and jewelry assembler, which exist in significant numbers in the national economy.

At step five of the disability analysis, the claimant need not produce any evidence. Seavey v. Barnhart, 276 F.3d 1, 10 n.9 (1st Cir. 2001). Instead, "the Commissioner bears some type of burden to come forward with evidence showing that there are jobs that the

applicant can perform despite his limitations." Id. And an ALJ can make this determination by obtaining the testimony of a VE about the claimant's vocational capacity. See e.g., Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). The ALJ must consider the claimant's residual functional capacity, age, education, and work experience to determine if she can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). Finally, the ALJ is entitled to credit the VE's testimony as long as there is "substantial evidence in the record to support the description of claimant's impairments given in the ALJ's hypothetical to the vocational expert." Berrios-López v. Sec'y of Health and Human Services, 951 F.2d 427, 429 (1st Cir. 1991). The omission of a functional limitation in the ALJ's hypothetical to a VE "warrants remand of the Commissioner's decision where inclusion of such information could have impacted the VE's conclusion and the ALJ's ultimate reliance on the VE's conclusion." Méndez v. Comm'r of Social Security, No. 12-1725, 2014 WL 537487, at *3 (D.P.R. Feb. 10, 2014).

During Rodríguez's hearing, her counsel added to the hypothetical "that the claimant cannot sit for more than some 15 to 20 minutes consecutively, without requiring a change in position." Tr. 67-68. Contrary to what Rodríguez says in her brief, see Docket # 17, p. 15, the VE did not modify her previous answer as a result of this new hypothetical. Tr. 67-68. Only when Rodríguez's counsel added that "the individual could not use [her] hands for repetitive movements, particularly for fine manipulation," was that the VE testified that, under those circumstances, Rodríguez "would not be able to perform satisfactory and would be out of the work force." Tr. 68. In other words, the only limitation that would have had an effect on the VE's testimony about the claimant's vocational capacity was the alleged

ataxia. But, as concluded above, the ALJ had substantial evidence to disregard Dr. Cardona's opinion that Rodríguez had ataxia. Thus, such a hypothetical is not supported by the record. See Simila v. Astrue, 573 F.3d 503, 521 (7th Cir. 2009) (noting that an ALJ need only incorporate into his hypotheticals "those impairments and limitations that he accepts as credible" (citations and internal quotation marks omitted)); see also Hernández-Cancel v. Comm'r of Social Security, No. 12-1487, 2014 WL 1096036 (D.P.R. March 19, 2014).

In sum, the hypothetical posed by the ALJ –which was in accord with the RFC finding– "has substantial support in the record, and, in reponse to . . . this hypothetical, the VE listed jobs that claimant could perform." González-Rodríguez v. Barnhart, 111 Fed. Appx. 23, 25 (1st Cir. 2004) (per curiam). Because the ALJ included all limitations that he found credible and supported by substantial evidence in determining the VE's hypothetical, the ALJ properly relied on vocational evidence at step five of the evaluation process to find that Rodríguez is capable of performing sedentary work that exists in significant numbers in the national economy.

**Conclusion**

Based on the foregoing, the Court concludes that the Commissioner's decision was based on substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31th day of March, 2014.

                                              s/*Salvador E. Casellas*
                                              SALVADOR E. CASELLAS
                                              U.S. Senior District Judge